# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CASSANDRA FAYE JOHNSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 13-cv-620-TLW |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Cassandra Faye Johnson seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 17). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 50-year old female, protectively filed for benefits under Titles II and XVI on August 9, 2010. (R. 153-58). Plaintiff alleged a disability onset date of April 28, 2009. Id. Plaintiff claimed that she was unable to work due to "diabetes, pain from bone spurs in both knees, depression, [and] high blood pressure." (R. 193). Plaintiff's claims for benefits were denied initially on January 3, 2011, and on reconsideration on June 29, 2011. (R. 84-85, 88-95; 86-87, 107-12). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 113-16). The ALJ held the hearing on May 17, 2012. (R. 37-67). The ALJ issued a decision on June 8, 2012, denying benefits. (R. 21-32). The Appeals Council denied review, so the ALJ's June 8, 2012 decision is the final decision of the Commissioner. (R. 1-6). Plaintiff timely filed an appeal. (Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since her alleged disability onset date of September 1, 2009. (R. 26). He then found that plaintiff had the severe impairments of "diabetes, hypertension, degenerative joint disease, and obesity." Id. The ALJ found that plaintiff's depression did not "cause more than minimal limitation in her ability to perform basic mental work activities" and was therefore non-severe. (R. 26-27). After analyzing the "paragraph B" criteria, the ALJ found that plaintiff experienced mild restriction in activities of daily living, social functioning, and concentration, persistence, and pace; and no

2

episodes of decompensation. (R. 27). Plaintiff's impairments did not meet or medically equal a listed impairment. (R. 28).

After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff could

> occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday, with normal breaks (Light work is defined in 20 CFR 404.1567(b) and 416.967(b)) except she cannot climb ladders, ropes, and scaffolds; and only occasional climbing of ramps or stairs; balancing; stooping; kneeling; crouching; and crawling.

Id. The ALJ then found that plaintiff's residual functional capacity allowed her to return to her past relevant work as a short order cook. (R. 30). Alternatively, at step five, the ALJ determined that jobs existed in significant numbers which plaintiff could perform, such as ticket seller (light), arcade attendant (light), and collator (light). (R. 31). Accordingly, the ALJ found that plaintiff was not disabled. Id.

**The Medical Evidence[1]**

On October 14, 2010, plaintiff presented to Donald E. Cohen, M.D. for a consultative medical examination. (R. 346-354). She complained of diabetes, hypertension, chest pain, bilateral knee pain, and depression. (R. 346). Plaintiff told Dr. Cohen that she had been prescribed glyburide for her diabetes, but had not been taking it because she could not afford it. She complained of monthly substernal chest pain without radiation, and informed Dr. Cohen that she was compliant with her hypertension medication. Id. She reported no functional limitations due to hypertension. Id.

Plaintiff reported a 25 year history of bilateral knee pain after a fall on ice in the 1980s. X-ray imaging revealed degenerative changes in her left knee. Plaintiff claimed she could stand

---

[1] Plaintiff focuses her points of error on two consultative examinations; therefore, the Court will focus its summary on those records.

for four hours before her knees would start to hurt. Id. She reported that she did not take pain medication for her knees because she could not afford it. (R. 346-47).

Dr. Cohen's objective findings indicate a normal unassisted gait with no limp. He reported that plaintiff was able to get on and off the examination table without help or difficulty. (R. 347). In his assessment, Dr. Cohen opined that plaintiff's diabetes needed further testing to determine the extent of any damage, and that she should be evaluated with an ETT (exercise tolerance test) to determine the origin of her chest pain and her exertional capacity. (R. 348-49). Regarding plaintiff's bilateral knee pain, Dr. Cohen opined that she had "crepitus" in both knees, likely bilateral degenerative arthritis, and some restriction of flexion bilaterally. Dr. Cohen noted that plaintiff indicated that she could stand for four hours, but to function in the workplace, she "may have to stand for six to eight hours with appropriate breaks." He noted that plaintiff had no evidence of gait disturbance. (R. 349). Dr. Cohen also noted that plaintiff's depression would not interfere with her ability to maintain employment. Id.

Plaintiff presented to Dr. First on December 21, 2010 for a second consultative examination. (R. 372-384). Plaintiff listed her complaints in order of severity: bilateral knee pain, depression, diabetes mellitus, "upon specific questioning, chest pain," and headache. (R. 372). Physical examination revealed a normal range of motion in plaintiff's extremities, and normal deep tendon reflexes in her extremities. (R. 374-75). She was able to move from reclining to sitting, and sitting to standing easily; she could walk around the examination room, and down a 70 foot hallway with no difficulty or assistive devices. (R. 375).

Dr. First performed an exercise tolerance test, wherein plaintiff walked on a treadmill set to 1.7 miles per hour with a ten percent incline. Plaintiff had to stop this test after 40 seconds due to "leg fatigue and shortness of breath." (R. 375, 377). Her immediate blood pressure reading

4

after this exercise was 180/110. This reading dropped to 130/80 after four minutes of resting. (R. 375). Dr. First's impressions were "essential hypertension not controlled, diabetes mellitus type II uncertain control, diabetic peripheral neuropathy by history, atherosclerotic peripheral vascular disease, chest pain uncertain etiology, osteoarthritis, headache uncertain etiology, depression, [and] morbid obesity." Id. Dr. First interpreted the ETT results as "[n]o definite evidence of myocardial ischemia for this amount of exercise. St changes of uncertain significance. Resting hypertension with hypertensive response to exercise. Severely decreased exercise capacity secondary to leg fatigue and shortness of breath." (R. 377). Dr. First did not offer any further functional limitations.

## ANALYSIS

Plaintiff raises two issues on appeal. First, she argues that the ALJ erred in analyzing the opinions of consultative examiners, Dr. Cohen and Dr. First, and second, that the ALJ's RFC determination is improper because it is not supported by substantial evidence. (Dkt. 18 at 3).

**Medical Evidence Analysis**

Plaintiff argues that the ALJ erred in his treatment of the opinions of consultative examiners Dr. Cohen and Dr. First. Specifically, plaintiff contends that the ALJ inaccurately summarized their opinions when he found that they support a finding that plaintiff can perform light activity. Id. Additionally, plaintiff complains that the ALJ "picked particular aspects from each report and ignored others," to plaintiff's detriment. Id. at 4-6.

Medical source opinions are reviewed in the following manner: "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." Williams v. Bowen, 844 F.2d 748, 757 (10th Cir.

5

1988). In this case, plaintiff had only sporadic treatment and none of the physicians from whom she sought treatment rendered an opinion about her limitations. Accordingly, the first category is not at issue. In addition, both Dr. Cohen and Dr. First examined plaintiff, so ordinarily their opinions are to be given more weight than the agency physicians who merely reviewed plaintiff's medical records.

When the ALJ does not give controlling weight to a treating physician's opinion, he is required to weigh the other opinions in the record using the same factors used to weigh a treating physician's opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns an opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

In this case, the ALJ made mistakes in his discussion of the opinions of Drs. Cohen and First. As argued by plaintiff, the ALJ did misstate some facts from each doctor's report, and he failed to weigh the opinions of these two doctors. However, as explained below, these errors are harmless.

The ALJ stated that he afforded "significant weight" to the opinions of "[t]wo medical experts from the State Agency," Luther Woodcock, M.D., and Karl K. Boatman, M.D., who each arrived at a light exertional RFC with no climbing of ladders, ropes, and scaffolds. (R. 30, 385-92; 495-502). Both of these agency doctors thoroughly reviewed (without error) and agreed with

6

the examination results of Drs. Cohen and First. (R. 30, 386-87, 496-97). Both also relied on other evidence in the record. (R. 386-87; 496-97).

Under these circumstances, the ALJ's errors are harmless because both agency doctors whom the ALJ did rely on to form his RFC correctly summarized the reports of Dr. Cohen and Dr. First, and the ALJ weighed the opinions of those two agency doctors. Further, plaintiff does not argue that the agency doctors' opinions are incorrect, and those opinions stand as substantial evidence supporting the ALJ's RFC determination. Remanding this case for the ALJ to correct a portion of his summarization of the evidence (a portion on which he did not rely) or to weigh specifically the opinions of the consultative examiners would not alter the outcome in plaintiff's favor. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012) (discussing harmless error). Finally, the ALJ also found that plaintiff's function report was further evidence that she could perform light exertional work. (R. 30). The Court finds that any error in the ALJ's treatment of the consultative examiners' opinions is harmless.

**RFC**

Next, plaintiff argues that substantial evidence does not support the ALJ's RFC determination. (Dkt. 18 at 6-8). Plaintiff bases her argument on Dr. First's exercise tolerance testing results, discussed above, claiming that those results show that she is incapable of light work. Id. She also complains that the ALJ failed to include her "stand and walking limitations in his hypothetical to the vocational expert." Id. at 7.

Plaintiff is attempting to reweigh the evidence, something which this Court cannot do. See Newbold v. Colvin, 718 F.3d 1257, 1265 (10th Cir. 2013) (The court may not reweigh the evidence). Initially, Dr. First did not place a specific stand/walk limitation on plaintiff after her exercise test. It appears that plaintiff bases her claimed limitation on Dr. First's recitation of

7

plaintiff's subjective description of her exercise capacity prior to testing. (Dkt. 18 at 7; R. 374-75). Such subjective complaints by plaintiff are not part of Dr. First's opinion.

In addition, the ALJ considered plaintiff's daily activities and search for work in conjunction with the opinions of Drs. Woodcock and Boatman (who correctly interpreted the consultative examination results of Drs. Cohen and First) in formulating both his hypothetical questions to the vocational expert and his ultimate RFC. The ALJ's hypothetical to the vocational expert was as follows:

> Okay. Hypothetical. I have an individual who at the – who is currently 51 years of age. … Eleventh grade education, but she's actually just one unit short from graduating, is that correct? … I'm going to give her a limited ability to read, write, and use numbers. Physically, I want you to consider that this individual [ ] could perform light and sedentary work activity; now in that regard, she could occasionally lift up and – lift and carry up to 20 pounds; she could frequently lift and/or carry up to 10 pounds; she could stand and/or walk with normal breaks for up to six hours in an eight-hour workday and she could sit with normal breaks for up to six hours in an eight-hour workday; she could use her hands for hand controls/feet for foot controls; she could – as far as postural limitations, she would be limited to occasionally climbing of ramp or stairs; she could not climb ladders or ropes or scaffolding; she would be limited to occasional bending, stooping, crouching, crawling, those types of activities; there would be no visual limitations, excuse me, there would be no manipulative limitations, no visual or communicative limitations, and no environmental limitations.
>
> Now she at one time they looked at her situation involving effective disorder or depression, but basically there's no – there's no work-related limitations in that regard. She is afflicted with symptomatology from a variety of sources that would include mild to moderate to occasional chronic pain. Pain would be of sufficient severity as to be noticeable for her, but nonetheless, she could remain attentive and responsive in a work setting and carry out work assignments satisfactorily. She does take medication for relief of some of her symptomatology, the appropriate use of medication would not preclude her from remaining reasonably alert to perform required functions presented in a work setting.

(R. 62-64). Further, the ALJ stated:

> Although the claimant alleges disability since April 2009, on July 23, 2009, the claimant was very happy with her new job and looked forward to going to work. (Exhibit 2F, page 6). The claimant testified that she was looking for work.

8

> …
>
> [T]he claimant stated that she took care of her grandchildren a couple of hours a day, had no problem with personal care, cooked daily, cleaned house, and did laundry. She stated that she walked, used public transportation, shopped, read, watched television, played games, went to church, and went to Bible study (Exhibit 1E). On May 5, 2011, the claimant stated that she enjoyed doing office work and caring for her grandchildren (Exhibit 14F, page 8). On December 15, 2011, the claimant was taking care of her two grandchildren (Exhibit 16F, page 5).
>
> Two medical experts from the State Agency determined that the claimant could perform light work activity with no climbing of ladders, ropes, and scaffolds (Exhibits 9F and 13F).

(R. 28-30). The Court finds the ALJ's RFC determination is supported by substantial evidence.

Furthermore, based on the hypothetical question ultimately adopted by the ALJ as plaintiff's RFC, the vocational expert determined that plaintiff could return to her past relevant work as a short order cook. Alternatively, the vocational expert also named the jobs of ticket seller, arcade attendant, and collator; all light exertional, unskilled jobs. The vocational expert also indicated that there were sedentary jobs which plaintiff could perform, although the ALJ did not ask him to specifically identify them. (R. 64-65). Plaintiff argues that she cannot perform *light* work, but she is silent regarding sedentary work. Remanding this case for the ALJ to include the sedentary jobs indicated by the vocational expert, even were plaintiff incapable of performing light work, would not alter the outcome. See Keyes-Zachary, 695 F.3d at 1163 (discussing harmless error).

## CONCLUSION

For these reasons, the ALJ's decision finding plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 12th day of February, 2015.

_____
T. Lane Wilson
United States Magistrate Judge